## WILLIAMS v. HILL, HARRIS & CO., Inc.

### No. 5922.

Court of Appeal of Louisiana. Second Circuit.

May 29, 1939.

Harold W. Hill, of Alexandria, for appellant.

Vincent Hazleton and Leo Gold, both of Alexandria, for appellee.

DREW, Judge.

The lower court in a well written opinion has correctly set forth the issues of this case and found the facts and arrived at the proper legal conclusion. The opinion is as follows:

"This is a suit for damages arising out of an alleged illegal provisional seizure. The aggregate amount sued for is $1652.50, itemized as follows:

1. For embarrassment, humiliation and mental pain and suffering .......................... $ 500.00
2. For inconvenience and physical discomfort sustained by plaintiff and his family........ 500.00
3. For injuries and damage to petitioner's credit.............. 500.00
4. Storage and drayage......... 2.50
5. Attorney's fees ............. 150.00

       Total ................... $1652.50

"The defendant had leased one of its dwelling houses in the City of Alexandria to a Mrs. G. O. Lowell, said dwelling con-

sisting of some five bedrooms and located at Texas Avenue and Harris Street, said City.

"Plaintiff alleges that he had subleased from Mrs. Lowell one of the rooms in said dwelling at a monthly rental of $8.00, payable in semi-monthly sums of $4.00 each in advance, and that he owed no rent at the time. Hill, Harris & Company, Inc., provisionally seized plaintiff's property along with the property of Mrs. Lowell in satisfaction for rent due by Mrs. Lowell.

"Mrs. Lowell having become delinquent in her rent payments, defendant Company, on May 19, 1938, seized the following property belonging to plaintiff and located within the room occupied by him and his family under said sub-lease from Mrs. Lowell, to-wit: 1 vanity dresser; 1 Philco radio; 1 2-piece living room suite, composed of couch and chair; 1 large congoleum rug, and 1 ice box. It is alleged that the couch seized was being used by him and his family as their bed on which they slept.

"It is alleged that plaintiff's rent being paid in advance on May 6, 1938, up to May 21, 1938, the defendant company had no right to seize his said property in payment of a rent claim against Mrs. Lowell.

"It is alleged that said seizure was made in plaintiff's absence at work, and that his wife was present and vehemently protested against the seizure, but without avail; that his said property was removed from the premises on the same day it was seized, and when plaintiff arrived from his work he found his wife out on the street completely distraught and in a state of hysteria.

"Plaintiff alleges that it was late in the day, and it was with great difficulty that he finally arranged for another house near by which he and his wife and child had to occupy by sleeping on the floor which was quite filthy and badly infested with mosquitoes; that it was not until late next day that he was able to secure another house to move to and it was not until the 25th of the month (May) that he was able to secure the release of his said seized furniture from defendant and moved to the house he had secured from another party, and then had to pay $2.50 drayage charges to have it moved from the storage where defendant had had it moved to, to be kept in custody, or rather that said furniture had been so moved and stored by Mr. Blalock, the City Marshal, in the execution of the writ of provisional seizure. Plaintiff also alleges that he was compelled to secure the service of an attorney in order to get his furniture released. He also alleges that as a result of the seizure of his furniture, his credit was greatly impaired.

"Defendant filed exceptions of no cause or right of action along with its answer of general denial, and at the suggestion of its counsel, the exceptions were referred to the merits.

"Trial of the case was proceeded with to the point where it developed that plaintiff had secured from Mrs. Lowell one of the rooms in the dwelling house which the latter had under lease from defendant company, said one single room not constituting an apartment, nor was the dwelling as a whole an apartment house. All of the rooms appeared to have a common entrance from the outside and the same used by all the occupants in common. At this point the defendant urged its exceptions on the ground that since the building did not appear to be an apartment house there could be no relationship of lessee and sublessee between the plaintiff and Mrs. Lowell, but that plaintiff should be deemed as merely a roomer in the building, and that under the law the property of a roomer in a leased dwelling is subject to the rent of the lessee of such building. After considering the law as applied to the circumstances in this case, the court overruled the exceptions for the reason that it appeared from the evidence that plaintiff and his family had full control over the particular room occupied by them, to the exclusion of any supervision or control thereof by Mrs. Lowell, and in such cases it appears to be the law that the relation of lessee and sublessee exists. See Pembrook v. Goldman, La.App., 176 So. 888; and Revised Civil Code, art. 2692.

"While there is some dispute as to whether plaintiff had in fact paid his rent in advance to Mrs. Lowell for the room in question, taking the testimony as a whole on that point, the court thinks that it fairly preponderates in favor of plaintiff. The court will, therefore, conclude that plaintiff had, in fact, paid on May 6, 1938, the sum of $4.00 to Mrs. Lowell as rent to cover the period of two weeks in advance, which would extend to the 21st of the month.

"Under the provisions of article 2706 of the Civil Code, the lessor's right of pledge extends to the property of the under-tenant

only when the latter is indebted unto the tenant for rent at the time when the lessor chooses to exercise his right. Under the evidence, therefore, Hill, Harris & Co., Inc., had no such right of pledge on the 19th day of May upon plaintiff's property on the leased premises, and the seizure was, in the opinion of the court, illegal.

"Article 295 of the Code of Practice plainly states that a privilege holder shall be personally responsible for all damages suffered by the defendant in provisional seizure, should the seizure have been wrongfully obtained. The defendant in the present case makes some contention that plaintiff did not notify defendant, nor the Marshal making the seizure, that his rent was paid up in advance. Mr. Harris, President of the defendant company, testified that he came to the premises late the afternoon of the day the seizure was made and was present when the Marshal made the seizure; that, while he did not go into the house, Mrs. Williams, plaintiff's wife, came to the front and talked with him, and that she did not say anything about the rent having been paid. Mr. Blalock, the Marshal, testified that while he was back in the room he heard a conversation between Mrs. Williams and Mrs. Lowell who was present, concerning rent and heard Mrs. Lowell state that she could furnish a receipt, but that he did not understand from the conversation that any rent had been paid, or else he would not have seized the plaintiff's property. Mrs. Williams and Mrs. Lowell both testified that Mrs. Williams did tell Mr. Blalock that the rent had been paid; that a semi-monthly rent of $4.00 was paid on May 6th to cover rental from that date until May 21st. Mrs. Lowell testified that she wrote out a receipt for the $4.00 on the 6th and gave it to Mrs. Williams. Mrs. Williams testified that her husband gave her the $4.00 to pay the rent in advance, and that she gave Mrs. Lowell the money, and received the receipt and that she gave the receipt to her husband, who had it in his pocket where he was at work at the Arkansas Oak Flooring Company on the day of the seizure.

"Mr. Williams testified to the same thing regarding his giving the money to his wife with which to pay the rent, about her paying it and giving him the receipt and his having it in his pocket while absent from home at work on that day. The receipt was produced in court, identified by Mrs. Lowell and by Mr. and Mrs. Williams, and filed in evidence.

"Mr. J. A. Ingstrum, apparently a disinterested witness testified that he was present when Dr. Blalock was making the seizure, and that he heard Mrs. Williams tell Mr. Blalock that she had paid the rent but that she did not have a receipt. This witness also testified that he heard Mrs. Williams tell Mr. Blalock that the furniture in that particular room belonged to her and her husband.

"Taking the testimony as a whole on this point, it appears to the court that it fairly preponderates in favor of the plaintiff on the question of notice to the Marshal of payment of rent in advance and ownership of the property. Besides, in Macias v. Lorio, Sheriff, 41 La.Ann. 300, 6 So. 538, the court held that the sheriff in making a seizure of the property, must know that the property belongs to the defendant in execution, and the defendant is not bound, on being notified thereof, to give any notice to the Sheriff,—citing a number of authorities for so holding.

"In suits for damages for illegal seizure, the amount that is recoverable under the law is actual pecuniary loss sustained, plus expenses incurred. Burglass v. Sheperd, La.App., 144 So. 67.

"Where the attaching creditor acts without malice, and with probable cause, only damages actually sustained can be recovered. Damages actually sustained, comprise not only pecuniary loss and actual expenses incurred, such as counsel fees and costs, but also the mortification, annoyance and vexation caused to the defendant in execution. M. L. Byrne & Co. v. L. H. Gardner & Co., 33 La.Ann. 6.

"The case at bar presents one wherein it appears from the testimony that Hill, Harris & Co., Inc., as well as Mr. Blalock, the Marshal, acted without malice and with probable cause. The building under lease by Mrs. Lowell from said Company appears to have been the ordinary kind used for a home by one family. Mrs. Lowell was taking in roomers and boarders in the building. The particular room occupied by Mr. Williams and his wife and child was just one of the rooms in the building, and in no manner arranged so as to suggest that it was an apartment. Ordinarily, an officer would

take it that the Williamses were roomers just as others were in the building. While it appears that Mrs. Williams informed the Marshal that she and her husband had rented the room and had paid up the rent in advance, she produced no receipt showing such to be the case, and her actions otherwise regarding the matter were to some degree at least unsatisfactory to the officer, and it might be said that the officer had reasons to believe that Mrs. Williams was endeavoring to deceive him at the time, therefore, we think he acted with probable cause for. thinking that the rent had not been paid.

■ "Although it was for only a short period of time, plaintiff, the court thinks, did experience some mortification, annoyance, and vexation as the result of the illegal seizure and detention of his property. For the time being it appears but fair to assume from the evidence that plaintiff did about the best he could do in deciding to take his family to the vacant house to spend the night. He did not have ready cash with which to pay for hotel accommodations, nor did he have relatives or friends upon whom he felt justifiable to call for same. The house he went to was located near by and it was there that both he and his family and Mrs. Lowell availed themselves of for the night. No doubt plaintiff experienced considerable mental suffering at the suffering by his wife and child in having to try to sleep on the floor, with continued bites from mosquitoes, as well as he himself being subjected to the same sort of discomfort. Plaintiff demands $500.00 for embarrassment, humiliation and mental pain and suffering, and $500.00 for inconvenience and physical discomfort sustained by himself and family. In the opinion of the Court $150.00 for each item, or $300.00 for both combined, would be ample.

■ "Considering the evidence relating to the claim for damage to petitioner's credit in the community is insufficient to warrant any sum, that claim will be rejected. As the court recalls the testimony, plaintiff made no effort to secure credit. Mrs. Wolf, a representative of the Wolf Furniture Company, testified that it was due to the fact that plaintiff's wife voluntarily called up and requested Mrs. Wolf to call for and repossess the articles of furniture which plaintiff had purchased on credit from that company, but had not finished paying for same, those articles were sent for and taken back; that the reason for taking them back was not any impairment of credit, but a voluntary and requested surrender. Plaintiff testified that when he secured another house in which to move his family he paid the rent in advance. Just that fact alone does not in the opinion of the court afford ground for concluding that his credit had been impaired, in the absence of a showing that the reason for his paying rent in advance was due to such impairment. Payment of rent in advance is not at all uncommon among landlords and tenants. There is no testimony which satisfactorily indicates that plaintiff's landlord refused to lease the premises without payment in advance because of anything that had happened in connection with the seizure in question.

■ "With reference to the claim of $2.50 for storage and drayage charges, Mrs. Wolf testified that her company sent for the furniture which she received back. However, plaintiff testified that he was compelled to pay $2.50 for the storage and return of certain furniture. It may be that there were other articles to which plaintiff had reference, therefore, we think he must have been to that expense on account of other furniture, therefore, the claim for that sum will be allowed.

■ "The claim of $150.00 for attorney's fees is made, but there is no proof in the record going to show that plaintiff paid, or contracted to pay, his attorney any sum for securing the release of the seizure; therefore no amount can be awarded on that score.

"For the reasons assigned, there will be judgment in favor of plaintiff in the sum of $302.50, with legal interest from judicial demand and all costs; and the demands in other respects will be denied.

"R. C. Culpepper
"Judge"

Appellant complains seriously of the amount of the award contending that it is grossly excessive. Appellee likewise contends that the award is inadequate and answered the appeal praying for an increase to the amount of $1000.

We have reviewed the jurisprudence pertaining to the subject and have arrived at the conclusion that the award does justice as to all parties.

The judgment of the lower court is therefore affirmed, with costs.