Inocencio Rivera Santos, Plaintiff and Appellant, *v.* Carlos R. Rossi, Defendant and Appellee.

No. 9025. Argued November 28, 1944.—Decided March 23, 1945.

684

*Virgilio Brunet* for appellant. *Miranda & Miranda Esteve* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

Carlos R. Rossi brought an action of debt against Juan Rivera Santos. In order to secure the effectiveness of the judgment and having noticed that the defendant frequently drove an automobile of the Studebaker make, he decided to make sure whether the automobile belonged to defendant before levying any attachment. To that end he asked Francisco Aguirre, the representative of the Studebakers, who was the owner of the automobile which he had seen Juan Rivera Santos drive. Aguirre checked his files and then informed Rossi that it belonged to María Amelia Espada, and erroneously added that she was defendant's wife. Upon learning this, Rossi decided to attach the automobile and after having obtained the necessary warrant, on Saturday, October 18, 1941, at noon, while Inocencio Rivera Santos, accompanied by his wife María Amelia Espada, drove the automobile on José C. Barbosa Street of this city, the marshal ordered him to stop the car and boarded it together with a chauffeur that Rossi had sent him in order that he should take the car to the place where it had to be deposited after the attachment had been levied. When the marshal told Inocencio Rivera Santos of his purpose, the latter protested and a discussion ensued which lasted about fifteen minutes. Then Inocencio Rivera Santos asked the marshal to allow him to drive to his attorney's office in Hato Rey, to which the marshal consented. After being advised by his attorney, he delivered the car to the marshal who took Rivera Santos and his wife to their home, and drove the car to the Casino Garage where he deposited it subject to the attachment. On that afternoon

Inocencio Rivera Santos went to Aguirre and told him what had happened and on that same afternoon at about two thirty, at his request, Aguirre lent him a Studebaker automobile for his use free of charge, until the matter was settled.[1]

When Aguirre realized that he had led Rossi into error, he called the latter and explained to him the whole matter whereupon on Monday afternoon, October 20, Mrs. Inocencio Rivera Santos received the automobile, returning to Aguirre the one that he had lent her husband.

On December 17, 1941, Inocencio Rivera Santos brought this action against Rossi for the recovery of $8,200 which he alleged was the amount of the damages which he had suffered on account of the attachment. He divided the amount in different items as follows:

"(a) For mental sufferings and anxiety and the
humiliation sustained_____$5,000
"(b) For injury to his credit_____ 3,000
"(c) For deprivation of the use and enjoyment of
his automobile_____ 200."

The case was heard on its merits and the court dismissed items (a) and (b) and as to item (c) it reduced the same to one hundred dollars and rendered judgment for plaintiff for that amount and costs. The defendant did not appeal but the plaintiff has taken the present appeal.

The appellant contends that the court erred in deciding that he had not offered any evidence tending to show the damages that he alleged to have suffered on account of his having been deprived of the use of his automobile, and that he should have been compensated for the deprivation of the use of his car during the two and a half days. Indeed, the appellant and his wife testified that on October 18, at

---

[1] According to Inocencio Rivera Santos' testimony, Aguirre lent him the car on the next day, and he had to hire a car for Saturday afternoon, but the court believed Aguirre and found that Rivera Santos had been deprived of a car only for two and one half hours.

about one thirty in the afternoon, the plaintiff had hired an automobile for that afternoon and that in fact he had used it and had paid eight dollars therefor. But as we have seen, that evidence was contradicted by Aguirre, and the conflict was decided by the court in favor of the appellee,[2] it not having been shown that in so doing the court committed manifest error of acted with bias, prejudice or partiality.

In view of the fact that the attachment was levied at 12:05 p.m. and that the marshal took the appellant first to his attorney's office in Hato Rey and later to his residence, since at 2:30 p.m. he got the automobile which Aguirre lent him and which he returned on the following Monday, and accepting the finding of the court to the effect that the appellant did not hire any car, we do not see what damages were caused to him by his being deprived of the use of his car. The award of damages, as stated by the lower court, is not a penalty imposed on the person who has to pay them, but a compensation to the one who has sustained the damages and, therefore, it is incumbent on the latter to prove the existence of said damages in order to obtain the compensation. The error assigned by the appellant is groundless.

Another error alleged to have been committed by the lower court is in failing to award compensation for damages to his reputation. In support of his contention appellant points out that his wife testified that when the discussion ensued between the marshal who insisted in attaching the automobile and the appellant who protested, the people around them laughed and sneered and that someone shouted, "That is what you get for not paying your debts." He further contends that he testified that the sale of refrigerators which he usually made as salesman of the International General Electric Co. of P. R. had been considerably reduced; that such a decrease was due to his state of mind by reason

---

[2] See note No. 1, p. 2.

of the incident of the attachment and because the people of San Juan had learned about the incident. The appellant in fact presented evidence to show that during the months subsequent to the attachment the sales had been less than those which he had made until October 18, 1941, but he did not prove that this reduction in his sales had been the direct consequence of the attachment. On the contrary, on December 7, 1941, the United States entered the present war and by reason thereof the sales diminished especially in electric and refrigerating appliances, according to Rossi's testimony, who for many years has been engaged in the sale of electric appliances, including refrigerators.

Lastly, appellant complains that the lower court awarded him the sum of $100 only for the humiliation, suffering, and mental anguish sustained by him by reason of the attachment.

The defendant did not appeal from the judgment. As to him, the award of $100 for the mental sufferings which plaintiff alleged to have sustained is foreclosed because he consented it. But inasmuch as the plaintiff appealed from the judgment and maintains that the amount of damages should be increased, we must determine, for the purposes of the appeal, whether under § 1802 of the Civil Code, which governs in this jurisdiction the matter of damages by fault and negligence, compensations should be granted for humiliation and mental suffering when not accompanied by physical pains as in the present case.

The right to recover damages for humiliation and mental sufferings independently of the existence of physical damages has already been recognized in this jurisdiction. *Mejías* v. *López*, 51 P.R.R. 20, and *Vélez* v. *General Motors, etc., Corporation,* 59 P.R.R. 583. But the question was not fully discussed in any of these cases, and now that some doubt have arisen as to whether that doctrine should be followed or be restricted to those cases where the damages to feelings

flow from physical damages, we have deemed it advisable to go into the matter, so that if the doctrine must prevail in this jurisdiction it should rest on more solid grounds.

Section 1802 uses a very broad language when dealing on the matter of damages.[3] It says:

"A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done."

Under this Section, and parting from a *dictum* in *Zalduondo* v. *Sánchez*, 15 P.R.R. 216, decided in 1909, and followed in a long series of cases, among others, *Díaz* v. *The San Juan L. & T. Co.*, 17 P.R.R. 64, *Maldonado* v. *The Porto Rico Drug Co.*, 31 P.R.R. 709, *Orta* v. *P. R. Railway, L. & P. Co.*, 36 P.R.R. 668, *Jorge* v. *Umpierre*, 49 P.R.R. 75, *Castro* v. *González*, 58 P.R.R. 369, *Reyes* v. *Aponte*, 60 P.R.R. 867, and *Díaz* v. *Cancel*, 61 P.R.R. 856, 866,[4] this court has

---

[3] The professors of the University of Barcelona, Blas Pérez González and José Alguer, when referring to § 1902 of the Spanish Civil Code, identical to our § 1802, have maintained that the general principle of said section is nothing else than the general consagration of the famous principle of law *alterum non laedere*, because in sanctioning the damage and fixing the responsibility to compensate, the Section is impliedly prescribing that no injury should be caused to another person. Enneccerus-Kipp-Wolff, Treatise on Civil Law, translated from the German by the above-mentioned professors, with comparative studies and the adaptation thereof to the Spanish legislation and jurisprudence, volume 2, p. 630.

[4] In *López* v. *American Railroad Co. of P. R.*, 50 P.R.R. 1, 30, this court said:

"There is no doubt that mental anguish may be considered as an element of damages when it is a direct and necessary consequence of the physical injury. [Citations] Some courts hold that it is difficult, if not impossible, to establish a dividing line between physical and mental suffering. . . . In this case it is not necessary that we fix the rule to be followed because the lower court has granted $300 damages, which is not excessive, according to the evidence presented, even discarding the mental suffering."

Undoubtedly these statements were inadvertently made, for the case involved a claim for physical damages as well as for damages to the feelings. The ruling to be followed did not have to be laid down because regardless of the *obiter dicta* in *Zalduondo* v. *Sánchez*, *supra*, and *Díaz* v. *The San Juan L. & T. Co.*, *supra*, the question was settled in *Maldonado* v. *The Porto Rico Drug Co.*, *supra*, *Orta* v. *P.R. Railway L. & P. Co.*, *supra*, and *Jorge* v. *Umpierre*, *supra*, p. 96.

been awarding compensation for damages to the feelings where physical damages have also been claimed.

Section 1802, which in this jurisdiction is the source of the action for damages caused by fault or negligence, *Méndez* v. *Serracante*, 53 P.R.R. 807, makes no distinction between physical damages and damages to the feelings. It is inferred from its language and it is so held by the decisions and the text writters, that in order to be compensable the damage must be the natural consequence of the fault or negligence of the person from whom recovery is sought or of the persons for whom the latter is responsible.. Civil Code, § 1303. In those cases where we have awarded compensation for mental suffering where physical injury also has been caused, the damages to the feelings have been the natural consequence of the physical injury, and since the latter is in turn the natural consequence of the fault or negligence of the defendant or of the person for whom he is responsible, the award for mental suffering and anguish in those cases has been but the logical application of the general principle of law involved in § 1802. But, must the mental suffering and anguish be subordinated to the existence of a physical injury? If the damages to the feelings have really existed and they are the natural consequence of the wrongful or negligent act of the defendant, or as it is said in the common law, if the proximate cause of the injury is the fault or negligence of the defendant, what logical reason, what principle of justice can prevent compensation? Indeed, is not a humiliation, such as the one suffered by the plaintiff in this case. more important than many physical injuries for which compensation is usually and unhesitatingly awarded? And if § 1802 makes no distinction between the damages to the feelings and the physical damages for the purpose of compensation, why should we make any distinction?

Referring to the circumstances which should concur in order that compensation be granted for damages, Manresa says:

"As to the determination of the damage, the latter must be genuine and must not flow from the fulfilment of the obligations, or from acts or omissions of the injured person himself,[5] and as to the proof of the fault or negligence, mere indications or inadmissible presumptions are not sufficient to prove said fault or negligence; they should be proved in such a manner as to leave no room to doubt their very existence and their connection with the injury caused, for in order that fault or negligence may become a source of obligation there must exist between them and the injury caused the relation of cause and effect." *Comentarios al Código Civil Español* (4th ed., 1931), vol. XII, p. 545.

Under the common law, as a general rule, when damages to the feelings are not accompanied by physical damages, no compensation is granted. The theory seems to be that the physical "impact" affords the desired guarantee that the mental disturbance is genuine.[5a] The supporters of this doctrine justify the same (1) on grounds of public policy, that is, that public policy demands its adoption as a sort of legal dogma because otherwise the door would be open to a multiplicity of suits in cases where the mental injury could be fictitious or founded on mere conjectures and speculation; and (2) that damages can not be measured in terms of money.

To these arguments we may reply that the courts should not deny compensation for damages really suffered simply to avoid an increase of suits. Neither should they deny a remedy to one who deserves it merely because a number of claims may be false. False claims are common in all branches of justice and it is the business of the courts to distinguish between genuine claims and false ones. The ques-

---

[5] Compare the requisite that the damages should not arise from acts or omissions of the prejudiced person himself, with the doctrine of contributory negligence which we have adopted from the Common Law to the effect that if plaintiff's negligence is in whole or in part the proximate cause of the injury, the plaintiff is not entitled to compensation.

[5a] This doctrine arose as a consequence of a misconception of Lord Wensleydale's *dictum* in *Lynch* v. *Knight*, 9 H. L. Cas. 577, 598 (1861). Sedgwick on Damages (9th ed., 1920), vol. I, p. 51.

tion is a matter of evidence. If the existence of the wrongful act which it is alleged caused the mental injury is satisfactorily proved and it is of such a nature that it reasonably should have caused the damage to the feelings, the possibility of fraud and simulation is excluded and there is no reason to deny recovery. We concede that the damages to the feelings as the ones in the present case are not subject to an exact compensation, but that same reason could be adduced whenever physical damages and damages to the feelings are claimed. 21 Corn. L. Q. 169; Sedgwick on Damages (9th ed., 1920), vol. I, p. 72, § 46; Herbert F. Goodrich, Emotional Disturbance as Legal Damage, 20 Mich. L. Rev. 497, 512–513.

Like every legal theory which in practice does not fulfil its aim of doing full justice, the doctrine of "impact" has been relaxed to such an extent that some courts have found impact in such minor contacts with the person injured, that it has played no part in causing any harm. To this effect, Prosser gives as an example of minor impacts a slight blow, a trivial jolt of a car, dust in the eye, or the inhalation of smoke, and it cites a Georgia circus case (*Christy Bros. Circus* v. *Turnage*, (Ga., 1928) 144 S. E. 680) which reduced the whole matter to the absurdity by finding impact where the defendant's horse evacuated his bowels into the plaintiff's lap. Prosser on Torts, pp. 214, 215.

A slight but increasing majority of the courts have repudiated the requirement of impact and have regarded the physical consequence themselves, or the circumstances of the accident as sufficient guarantee that the mental injury is genuine. *Op. cit.* p. 215. The same author says (pp. 215–216):

"There must necessarily be some requirement of satisfactory proof, and at least in the absence of knowledge of the plaintiff's unusual susceptibility, there should be no recovery for mental disturbance where no normal individual would be affected under the circumstances. But in general, it seems clear that the courts which deny all remedy in such cases are fighting a rearguard action."

To that same effect, Judge Magruder states at the close of his article, Mental and Emotional Disturbance in the Law of Torts, 49 Harv. L. Rev. 1033, 1067:

"All in all, it is fair to say that the courts have already given extensive protection to feelings and emotions. They have shown a notable adaptability of technique in redressing the more serious invasions of this important interest of personality. No longer is it even approximately true that the law does not pretend to redress mental pain and anguish 'when the unlawful act complained of causes that alone.' If a consistent pattern cannot yet be clearly discerned in the cases, this but indicates that the law on this subject is in a process of growth."

Contrary to the doctrine of impact, in *Mejías* v. *López, supra,* and *Vélez* v. *General Motors, etc., Corporation, supra,* this court granted compensation for mental injury without the presence of physical impact. In the former case the defendant had sold a radio to the plaintiff under a contract of conditional sale. The buyer paid several installments but failed to pay the balance. An agent of the vendor entered the home of the plaintiff and without any writ and against the will of the plaintiff, and in the presence of a crowd who gathered there, the agent seized the radio in order to deliver it to the defendant. The plaintiff claimed damages for mental suffering and anguish caused to her by the wrongful act of defendant's agent in seizing the radio under the circumstances which he did. Upon reversing the judgment dismissing the complaint on demurrer this court in the pertinent part (pp. 24, 25) of its opinion said:

"The basis of the action brought is the wrongful act alleged to have been committed by the defendants in forcibly entering the home of the plaintiff and in doing there the things charged against them as having caused the plaintiff the anxiety, mental anguish, and nervous prostration for which indemnity is sought, in the sum of three thousand dollars."

"            *     *     *     *     *     *     *

"Section 1802 of the Civil Code, 1930 ed., provides that a person who by an act or omission causes damage to another by his fault

or negligence shall be liable for the damage so done, and, according to section 1803 of the same code, this obligation is enforcible, not only for personal acts and omissions, but also for those of persons for whom another is responsible."

In *Vélez* v. *General Motors, etc., Corporation, supra,* the plaintiff and his wife bought from defendant Arecibo Motors an automobile under a conditional sale contract which was subsequently assigned to the other defendant General Motors Acceptance Corporation. Two installments having accrued and upon default in the payment thereof, the defendant General Motors Acceptance Corporation, without any writ and against the will of the plaintiff, seized the automobile and deposited it with Arecibo Motors. Subsequently the latter brought an action against the plaintiff and his wife to recover the purchase price and attached the automobile sold, and other real property which did not belong to the plaintiffs. The owners of the automobile claimed several items of damages, among them, one for one thousand dollars for the humiliation suffered by them by reason of the wrongful seizure of the automobile. The district court dismissed the complaint on demurrer rejecting as not recoverable some of the items for actual damages, reducing the amount of the claim for such damages to $355, and as to the item for mental suffering it also was rejected because in its opinion they were not compensable. Since the amount recoverable, according to the district court, was reduced to $355, it granted the demurrer on the ground that the amount was not sufficient to vest the court with jurisdiction. After agreeing with the lower court in that the actual damages alleged did not lie, this court reversed the judgment in the following terms (p. 588):

"However, we do not agree with the trial court that 'the mental suffering caused by the tortious act charged against General Motors Acceptance Corporation is not ground for compensation.' This dis-

agreement leads us to the conclusion that the court erred in not giving the plaintiff an opportunity to amend his complaint, because without changing the amount of the damages as estimated by him personally, he might amend his pleading in such a way as to present a proper case to be originally determined by the district court.

"If the wording of the last claim for $1,000 is observed, it will be seen that it covers all the acts alleged, including that of the seizure of the automobile without due process of law.

"That being so, even though the action were restricted, as it should be, to the alleged wrongful seizure of the automobile, without changing the theory of the complaint, the latter might be amended by confining the claim for damages on account of mental suffering to those, if any, caused by the aforesaid seizure.

"That a claim for damages for mental suffering is proper in cases of this kind, where the necessary basic circumstances exist, has been decided by this court in *Mejías* v. *López*, 51 P.R.R. 20, 25 . . ."

The legal principle expressed in § 1802 of our Civil Code is the same as that of § 2315 of the Louisiana Civil Code which in its pertinent part reads thus:

"Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it."

Under § 2315 Louisiana allows compensation for the humiliation and mortification caused by reason of wrongful attachments. In *M. L. Byrne & Co.* v. *L. H. Gardner & Co.*, (1881) 33 La. Ann. 6, damages actually sustained were allowed for the humiliation and vexation which plaintiff suffered in being forced to support the presence of sheriff's keeper for two weeks in their business establishments, watching the commercial transactions carried out. The same principle is sustained in *General Motors Acceptance Corporation* v. *Sneed*, (La., 1928) 119 So. 417; *General Motors Acceptance Corporation* v. *Sneed*, (La., 1929) 121 So. 254, 256, and *Williams* v. *Hill, Harris & Co.*, (La., 1939) 190 So. 157. In the latter case it was said at p. 160:

"Where the attaching creditor acts without malice, and with probable cause, only damages actually sustained can be recovered.

Damages actually sustained, comprise not only pecuniary loss and actual expenses incurred, such as counsel fees and costs, but also the mortification, annoyance and vexation caused to the defendant in execution. *M. L. Byrne & Co. v. L. H. Gardner & Co.*, 33 La. Ann. 6.''

Lastly, in *Malczewski* v. *New Orleans Ry. & Light Co.*, (La., 1924) 101 So. 213, 35 A.L.R. 553, damages were allowed for the humiliation suffered by the plaintiff by reason of the offensive and insulting manner adopted by the agent of the defendant in not allowing her to park her automobile in a parking place which defendant devoted for that purpose.

Louisiana is not the only jurisdiction which under a statutory provision, substantially similar to ours, awards damages for mental suffering independently of physical damages. In France, for example, they are also awarded. To this effect, Planiol-Ripert in his *Tratado Práctico de Derecho Civil Francés* (translated into Spanish by Mario Díaz Cruz), vol. 6, p. 763, § 550, states:

''The courts have granted damages by reason of pecuniary and mental injury *or for mental only* in the following cases:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

''(b) to the parents whose minor child has been retained by a third person who refused to return him;

''(c) to the parents of pupils to whom the teacher explained obscene or antireligious matters;

''(d) to the person who received an offensive letter even though it had no publicity;

''(e) to one who against his will was made object of a public subscription;

''(f) to the family of a deceased person because his autopsy was made without the consent of the former;

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

''And this does not mean that the courts award by reason of any damage to the feelings; precisely in damages to the feelings is where we find a great number of dismissals because the damage was trivial. But whenever a right has been unjustly violated, even

though there exists no other injury than mortification or anxiety caused by the tortious act, the victim is entitled to obtain the recognition of the damage and to have judgment in his favor, even though it should be only for the costs, and when the costs do not include all the disbursements, an amount which should cover all expenses." (Italics ours.)[6]

In Argentina the Federal Supreme Court and the majority of the courts, relying on § 1078 of the Civil Code,[7] limit the award for damages to the feelings to some torts in which the wrongful act is a crime. On the other hand the majority of the text writers of that country assume a more liberal attitude and resting on the provision of the code which deals in general with the liability for a wrongful act, § 1109,[8] are of the opinion that under this Section compensation should be allowed for the damage caused to any human interest without restricting it to those cases where there exists pecuniary interest alone. This latter position has been gradually increasing and has influenced the enactment of preliminary drafts for a new Civil Code. See 43 Col. L. Rev. 219 et seq. If § 1078 did not exist in Argentina probably its courts would not have limited the recovery for damages to cases where the latter is the consequence of crime.

Lastly, in Spain under § 1902, compensation for damages to the feelings has been granted but until now we know of

---

[6] It is true that in France the compensation granted for damages to the feelings, is, as a general rule, of small amount. However, that does not affect the rule of law. The compensation granted depends as a general rule on the custom of the country which develops as it comes in contact with other customs of more practicable effect prevailing in other civilized countries. In Puerto Rico, for example, compensation for damages caused by fault or negligence granted in the first two or three decades of this century, is to a certain extent unfair because the same were insufficient when compared to the ones that have been awarded during the last 20 years. The change is due to the influence of our social and commercial relation with the United States and to the influence of political and juridical institutions in our country.

[7] Section 1078 of the Argentine Civil Code reads thus:

"If the act were a crime, the obligation arising therefrom would not only include compensation for loss and interest but also for the mental injury

no case where the Supreme Court of the nation has decided a case granting or refusing compensation for damages to the feelings other than for honor or family emotions, etc. See F. Clemente de Diego, *Instituciones de Derecho Civil Español,* vol. 2, pp. 311, 312. In his commentaries on the Spanish Civil Code (4th ed., 1931), vol. XII, pp. 549, 550, Manresa deals to some extent with that matter and among other things he says:

"Are damages to the feelings recoverable? The opinion which we may call classic, repudiated the recovery for damages to the feelings not only on the ground that it was omitted in the Code of Napoleon and in those inspired therein, but also because of the impossibility of fixing the compensation. But today the opposite theory is forcing its way and damages to the feelings, are placed in the same standard as damages to property, for if the former befalls on the patrimony of the injured person and is of a more serious consequence than the latter, it is unfair to deny an opportunity to recover. Many modern codes such as the Austrian (Section 1325), the German (Section 847) and the Swiss (Section 54) have already accepted the doctrine of recovery for damages to the feelings; and in those countries where the code does not admit or regulate the same, it is being established by the courts. It has thus happened in Italy and in our own country.

"*          *          *          *          *          *          *

"This doctrine highly plausible because of its progressive effect and which does not contradict the provision of Section 1902, due to its broad language, has been confirmed subsequently by the decisions of December 14, 1917 and November 7, 1919."

Indeed, we see no reason whatsoever to restrict compensation for damages to the feelings, to those cases where the honor and family emotions are involved and to deny them in cases like the present one, where due to its circumstances,

which the offense might have caused the person to suffer, disturbing his personal safety, or the enjoyment of his property, or injuring his legitimate affections."

[8] Section 1109 of the Argentine Civil Code provides:

"Any person performing an act which by his fault or negligence causes injury to another, is bound to redress the damage. . . ."

it is evident that a person of normal susceptibility must necessarily have suffered mental anguish as deep as, or perhaps deeper than, in many cases where a libelous publication is involved.

We have no doubt that a person of normal susceptibility must, upon the wrongful attachment of his automobile in the street, under the circumstance of the present case, suffer anxiety and humiliation, especially if account is taken of the fact that the wrongful attachment was levied while the plaintiff was going with his wife by one of the most crowded streets of San Juan at a time of heavy traffic, because it was the time when all those who work in San Juan return to their homes.

The judge of the lower court allowed one hundred dollars for this item of damages invoking *Anisman* v. *Nagle,* (La., 1933) 148 So. 885. In that case the plaintiff prayed judgment for $2,100 for mental suffering, loss of time, and attorney's fees. The attachment was levied for $750 which was the amount owed to Mrs. Nagle by a government agency. It seems clear that the humiliation which Mrs. Nagle must have suffered when the attachment was levied against her, does not compare with that suffered by the appellant in the present case, since the attachment levied against said lady could not have the publicity that the attachment in the present case had, neither were there present the humiliating circumstances which concurred in the case at bar.

In view of the attendant circumstances and taking into consideration the attitude of the appellee in trying to mitigate the damages caused to the plaintiff by returning his car as soon as he learned of the error to which he had been led, we are of the opinion that the amount of damages granted should be increased to three hundred dollars only, which we believe reasonable. The judgment will be modified and as modified affirmed.